**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEVIN MOSS,**
**a/k/a Darrel Moore,**

                                     **Petitioner,**                 **9:03-CV-1496**
**v.**                                                            **(LEK)**

**WILLIAM PHILLIPS,**
**Superintendent,**

                                     **Respondent.**
_____

**APPEARANCES:**

**KEVIN MOSS**
a.k.a. Darrel Moore
Petitioner, _pro se_
99-A-6407
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**         **ASHLYN H. DANNELLY, Esq.**
Attorney General of the                  Assistant Attorney General
State of New York
120 Broadway
New York, New York 10271

**HON. LAWRENCE E. KAHN**
**U.S. District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.**      **Background[1]**

        **A.**      **State Court Proceedings**

---

[1] The background information in this Memorandum-Decision and Order is derived from the state court records provided to the Court.

The record reflects that on November 15, 1998, *pro se* Petitioner Kevin Moss a/k/a Darrel Moore ("Moss") entered the apartment of Georgette Delaney, a college student who at the time was living in a second floor apartment located in Troy, New York.  On that day, she was studying for an exam in her living room when she walked down the hallway towards her kitchen in order to get something to drink.  When she pushed against the door to the kitchen it did not open.  Delaney then noticed a hand on the door, and soon thereafter saw a man, later identified as Moss, standing in her kitchen.[2]  When she asked him what he was doing there, he responded that he was a carpet cleaner, and that he must have been in the wrong apartment because he "was looking for the Mittnights, those old people downstairs."[3]  Delaney directed him to leave her apartment, after which he left the residence and began walking downstairs.  Delaney then noticed that Moss had begun talking to Linda Mittnight, a resident of the apartment on the first floor of Delaney's building.   Since it appeared to her that her neighbor did not know Moss, Delaney directed him to leave the building.

Linda Mittnight testified that on November 15, 1998, she was listening to messages on her telephone's answering machine when the back door to her apartment was opened and Moss walked in.  He then informed her that he was there "to clean [the] carpets," despite the fact that her residence had hardwood floors, no carpeting, and merely "some area rugs."  Additionally, no one in the Mittnight home had contacted anyone to clean the rugs in their apartment.

After Moss left, Mittnight called the police and officers from the Troy City Police

---

[2]Delaney did not know Moss, had never seen him before, and had not given him permission to enter her apartment.

[3]Moss did not have any cleaning equipment with him at the time.

Department arrived at the scene and obtained a description of Moss.  Officers Christopher Kehn and John Coons of the police department eventually came upon Moss, who matched the description that had been provided to them by the two women, a few blocks from the Delaney residence.  At that time, Officer Kehn observed a kitchen knife sticking out of Moss's back pocket.  When the officer removed the knife, Moss became agitated and started shoving and pushing the officer, who then placed him under arrest for harassment.  After he was subdued, both Delaney and Mittnight were transported to the location where Moss was being detained.  Mittnight testified that when she was asked to identify Moss, she asked the officers to ask Moss to say, "I came to clean your carpets."  When he did, Mittnight definitively identified Moss as the man who had been in her apartment.  Delaney also identified Petitioner at that time as the man who had also been in her apartment.  Officer Kehn then showed her the knife that he had taken from Moss, and Delaney informed the officer that the knife was from her kitchen.  Upon returning to her home, Delaney found the knife she believed had been recovered from Moss.  She then called both the police and the District Attorney's office and informed them that she had found the knife she believed was missing from her apartment.

The state court records also reveal that as he was being taken to the police station, Moss "blurted out" that he "didn't burglarize that girl, [he] just went to visit her."  While at that station, after having been advised of his Miranda rights, Miranda v. Arizona, 384 U.S. 436 (1966), he stated that "the girl upstairs goes to college and the lady downstairs is nuttier than a fruitcake."

As a result of the foregoing, Moss was indicted by a Rensselaer County grand jury and charged in Indictment No. 98-1192 with second degree burglary, in violation of N.Y. Penal L. § 140.25(2).  Beginning on August 10, 1999, Moss was tried before a jury on that charge in

3

Rensselaer County Court with County Court Judge Patrick J. McGrath presiding.  At the

conclusion of that trial, the jury convicted Moss of second degree burglary.

On October 14, 1999, Moss appeared before Judge McGrath for sentencing.  At that

proceeding, the County Court sentenced Moss, as a persistent felony offender, to an indeterminate

term of fifteen years to life imprisonment.  See Transcript of Sentencing of Kevin Moss (10/14/99)

("Sentencing Tr.") at 11.

In the direct appeal of his conviction, Moss argued, through counsel, that:  1) the evidence

adduced at trial was legally insufficient to sustain the conviction and the jury's verdict was against

the weight of the evidence; and 2) the sentence imposed was excessive.  In addition to those

arguments advanced by counsel, Petitioner filed a *pro se* supplemental brief in which he raised the

following claims:  1) the indictment should have been dismissed because his defense attorney at

the time of the grand jury presentation subsequently joined the Rensselaer County District

Attorney's office; 2) the grand jury proceeding was defective; 3) the prosecutor failed to comply

with New York's "Rosario rule," People v. Rosario, 9 N.Y.2d 286 (1961); 4) the trial court

erroneously failed to suppress the statements he made to the police; 5) Judge McGrath wrongfully

allowed "false accusations of uncharged crimes" to be admitted into evidence at trial; 6) the

prosecutor failed to comply with New York's criminal procedure law ("CPL") regarding voice

identification testimony; 7) the County Court's instructions to the jury were deficient and/or

misleading; and 8) the prosecutor's conduct deprived Moss of his right to a fair trial.  See

Supplemental *Pro Se* Appellate Brief  (2/8/01) ("*Pro Se* Appellate Brief").

In its decision dated July 19, 2001, the New York State Supreme Court Appellate Division,

Third Department unanimously affirmed Moss's conviction.  See People v. Moore, 285 A.D.2d

4

827 (3rd Dept. 2001).[4]  Moss sought leave to appeal that decision from the New York Court of

Appeals, however in its order dated December 28, 2001, the Court of Appeals denied Moss leave

to appeal.  People v. Moore, 97 N.Y.2d 685 (2001).

On April 14, 2003, Moss filed an application for a writ of error coram nobis with the Third

Department in which he argued that his appellate counsel rendered ineffective assistance.  That

application was apparently opposed by the District Attorney,[5] and on July 1, 2003, the Appellate

Division denied Petitioner's coram nobis application.   On July 14, 2003, Petitioner sought leave

to appeal that decision to the New York Court of Appeals, which application was denied on

October 30, 2003.  People v. Moore, 100 N.Y.2d 644 (2003).

On or about November 12, 2003, Petitioner filed a *pro se* Motion to vacate his sentence

pursuant to CPL § 440.20.  In that application, Moss argued that his sentence as a persistent felony

offender violated the rule announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S.

466 (2000).  See Affidavit in Support of CPL § 440.20 Motion.  The District Attorney opposed

that application, and on July 6, 2005, Judge McGrath issued a written decision denying that

application.  See People v. Moss, No. 98-1192 (Renn. Cty. Ct. July 6, 2005) at 2.  Moss's

application for leave to appeal that decision to the Third Department was denied on September 20,

2005.

---

[4]For reasons not readily apparent in the record provided to the Court, the Appellate Division only referred to Petitioner by his alias, Darrel Moore, in its decision.  However, because Petitioner signed his amended  habeas application using the surname "Moss," and the Respondent has referred to Petitioner by that name, this Court will refer to Petitioner as "Moss."

[5]Although this Court was not provided with a copy of those opposition papers, the state court records provided to the Court include Moss's reply to the District Attorney's papers in opposition to the coram nobis application.

**B.      This Action**

Petitioner commenced this proceeding, *pro se*, on December 19, 2003.  Dkt. No. 1.  Moss

thereafter filed an application to amend his Petition, Dkt. No. 26, which application was granted by

Magistrate Judge Gustave J. DiBianco.  Dkt. No. 28.  Moss then filed an amended Petition in

which he asserts numerous grounds for relief.  Dkt. No. 30 ("Am. Pet.").  In that pleading, he

contends that: 1) the jury's verdict was both against the weight of the evidence and not supported

by legally sufficient evidence; 2) his right to conflict free representation was violated because his

defense counsel at the time of the grand jury proceedings later accepted employment at the District

Attorney's office; 3) the grand jury proceedings were defective, and the indictment should have

been dismissed, because of false and misleading information presented to that body; 4) the

prosecutor violated New York's <u>Rosario</u> rule when he failed to provide the defense with certain

information; 5) Moss's statements were improperly admitted into evidence; 6) the County Court

improperly allowed "false accusations of uncharged crimes" to be admitted into evidence at trial;

7) the prosecution "failed in their statutory obligation," under the CPL to give the defense notice of

its intent to use voice identification evidence at trial; 8) the trial court's refusal to instruct the jury

that no burglary took place if Moss did not have the intent to commit a crime at the time of entry

constituted error; 9) the court's instructions to the jury both during trial and after summations were

flawed; 10) the prosecutor's "inflammatory remarks" deprived Petitioner of a fair trial; 11) his

sentencing as a persistent felony offender violated the rule announced in <u>Apprendi</u>; and 12)

Petitioner was deprived of the effective assistance of appellate counsel.  <u>See</u> Am. Pet.

Magistrate Judge DiBianco thereafter afforded the Respondent until September 15, 2006 in

which to file a response to Moss's amended pleading (Dkt. No. 32), and on September 13, 2006, the

Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed an

Answer (Dkt. No. 36), together with a memorandum of law in opposition to Moss's amended Petition

(Dkt. No. 37).  Petitioner thereafter submitted a traverse in further support of his amended habeas

application.  See Dkt. No. 38.  This matter is currently before this Court for disposition.[6]

**II.____Discussion**

      **A.     Standard of Review Applicable to Moss's Claim**

      The April 1996 enactment of the Antiterrorism and Effective Death Penalty Act

("AEDPA") brought about significant new limitations on the power of a federal court to grant

habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard,

the Second Circuit noted in Rodriguez v. Miller, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the adjudication
> resulted in an outcome that:  (1) was "contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States"; or (2) was
> "based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding."

Rodriguez, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); see also DeBerry v. Portuondo, 403 F.3d

57, 66 (2d Cir. 2005); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v.

LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).  In providing guidance concerning application of this test,

the Second Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different

---

[6]In accordance with General Order No. 32, this Court rescinds the prior reference of this action to Magistrate Judge Gustave J. DiBianco.

> conclusion than the Court did.  [Williams v. Taylor, 529 U.S. 362,]
> at 405-06 [2000]; Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir.
> 2001).... [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it.  Williams, 529 U.S. at 413.

Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007); see also Williams v. Artuz, 237 F.3d 147,

152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's determination was merely incorrect or erroneous, but instead whether

such determination was "objectively unreasonable."  Williams, 529 U.S. at 409; see also Sellan v.

Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  "Objectively unreasonable" in this context means

"'some increment of incorrectness beyond error is required'" in order to grant a federal habeas

application.  Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (quoting Francis S., 221 F.3d at

111).

###### B.    Review of Moss's Claims

###### 1.    Evidence of Guilt

Moss initially argues that the evidence adduced at trial was legally insufficient to sustain

his conviction, and that the jury's verdict was against the weight of the evidence.  Am. Pet.,

Ground One.

Addressing first Moss's claim regarding the weight of the evidence, the Court notes that

weight of the evidence review is a product of New York state statute and therefore merely a state

law issue.  See CPL § 470.15; Graham v. Ricks, No. 9:02-CV-0303, 2004 WL 768579, at *14

(N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (citations omitted); Cardena v. Giambruno, No. 03CIV

3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (citations omitted).[7]  As such, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial.  Graham, 2004 WL 768579, at *14; Cardena, 2004 WL 239722, at *4; Glisson v. Mantello, 287 F.Supp.2d 414, 441 (S.D.N.Y. 2003) (citing Givens v. Burge, No. 02 Civ. 0842, 2003 WL 1563775, at *10 (S.D.N.Y. Mar. 4, 2003) (collecting cases)); McBride v. Senkowski, No. 98 CIV. 8663, 2002 WL 523275, at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (citing Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996)).

Turning to Petitioner's challenge to the sufficiency of the evidence, the Court notes that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  See Fiore v. White, 531 U.S. 225, 228-29 (2001); Jackson v. Virginia, 443 U.S. 307, 315 (1979); In re Winship, 397 U.S. 358, 364 (1970).  An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  Herrera v. Collins, 506 U.S. 390, 402 (1993).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 324; Schlup v. Delo, 513 U.S. 298, 323 n.38 (1995)  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its

---

[7]It is well-established that habeas corpus review is not available for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-69 (1991).

favor.  Jackson, 443 U.S. at 319.  Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984) (citing Jackson) (other citations omitted).

To convict Moss of the second degree burglary charge, the prosecutor was required to prove that he knowingly and unlawfully entered Delaney's residence with the intent to commit a crime therein.  See e.g., Trial Tr. (8/12/99)[8] at 116, 118.

The evidence at trial established that Moss entered Delaney's residence through its back door without knocking, walked through a portion of her residence without announcing his presence, impeded her entrance into the kitchen by blocking a door, and, when discovered, informed her that he actually intended to enter the first floor apartment of the Mittnights so that he could clean their carpets.  However, neither Delaney nor the Mittnights had seen Moss before the day he entered their apartments, he was not called by either party to clean carpets or rugs, and he did not have any carpet-cleaning materials with him at the time.  Those facts, particularly when viewed in combination with Moss's possession of a knife and his spontaneous statement that he "didn't burglarize that lady, [he] just went to visit," provide ample support for the Appellate Division's conclusion that Moss's unlawful entry and his "implausible and contradictory explanations for his unauthorized presence" established that there was legally sufficient evidence to demonstrate that he had unlawfully entered Delaney's apartment with the intent to commit a crime therein.  See Moore, 285 A.D.2d at 828-29.

Since there was more than sufficient evidence to demonstrate Moss's guilt of the burglary

---

[8]For each day of Moss's trial, the court reporter numbered the first page of the transcript as page number one.  This Court will therefore refer to the specific date of the trial transcript when referring to that record in this Memorandum-Decision and Order.

charge, the Court finds that Petitioner has not established that the Third Department's rejection of that appellate claim is either contrary to, or represents an unreasonable application of, <u>Jackson</u> and its progeny.  His initial ground for relief is therefore denied.

### 2.     Conflict of Interest

In his second ground, Moss asserts that his right to a fair trial was violated when the attorney who initially represented him in the criminal matter subsequently accepted an employment offer at the Rensselear County District Attorney's Office ("District Attorney").  <u>See</u> Am. Pet., Ground Two.  Petitioner asserts that "former defense counsel gain[ed] privileged and confidential information concerning this case," and that the trial court's failure to ascertain "the depth of the conflict" that was created by the foregoing deprived Moss of his right to a conflict-free criminal trial.  <u>Id.</u>

A criminal defendant's Sixth Amendment right to counsel includes a right to conflict-free representation.  <u>See</u> <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest"); <u>see also</u> <u>Eisemann v. Herbert</u>, 401 F.3d 102, 107 (2d Cir. 2005) (citations omitted).

In considering this claim, the Court notes that Petitioner himself admits that after defense counsel accepted employment with the District Attorney, the trial court disqualified that office from prosecuting the case against Moss.  <u>See</u> Am. Pet., Ground Two.  The record establishes that a special prosecutor – the Columbia County District Attorney's Office – subsequently prosecuted

Moss at trial.[9]  The appointment of that special prosecutor strongly suggests that Moss was not prejudiced by any claimed conflict of interest that may have existed with respect to his prior counsel.[10]  Furthermore, Petitioner has wholly failed to provide the Court with any evidence of the prejudice he now claims to have suffered as a result of the foregoing, a fact which establishes that Moss has failed to shoulder the burden of proof he bears in this action.  E.g. Gillis v. Edwards, 445 F.Supp.2d 221, 233 (N.D.N.Y. 2006) (McCurn, S.J.)

In light of the above, this Court finds that Moss has not demonstrated that the Appellate Division's decision denying this aspect of his appeal, see Moore, 285 A.D.2d at 829, is either contrary to, or represents an unreasonable application of, Wood and its progeny.  The Court therefore denies Petitioner's second ground for relief.

### 3.    Defective Grand Jury Proceedings

Moss next argues that the prosecutor presented "false and misleading information" to the grand jury that ultimately indicted him.  Am. Pet., Ground Three.  He argues that, as a result, he was subject to an "improper prosecution."  Id.

Unfortunately for Petitioner, habeas courts have not recognized a federal constitutional right to indictment by a grand jury in a state criminal prosecution.  See Smith v. Walsh, No. 00-CV-5672, 2003 WL 22670885, at *7 (E.D.N.Y. Oct. 20, 2003); see also Alexander v. Louisiana, 405 U.S. 625, 633 (1972).  Claims based on alleged defects in grand jury proceedings

---

[9]This Court was not provided with a copy of the order issued by Judge McGrath wherein he appointed that special prosecutor.

[10]The record is unclear as to when during the criminal proceedings Moss obtained his new counsel.  In his *pro se* appellate brief, Moss asserts that the attorney who initially represented Moss represented him "at the Preliminary Hearing, prior to indictment or immediately afterwards."  See *Pro Se* Appellate Brief at 5.

therefore do not present an independent, federal constitutional claim.  Campbell v. Greene, 440

F.Supp.2d 125, 142 (N.D.N.Y. 2006) (McCurn, S.J.) (citing  Lopez v. Riley, 865 F.2d 30, 32-33

(2d Cir. 1989); Barnes v. Giambruno, No. 01 CIV. 8965, 2002 WL 850020, at *7 (S.D.N.Y. May

2, 2002)) (other citation omitted); see, e.g., Grant v. Ricks, No. 00-CV-6861, 2003 WL 21847238,

at *4 (E.D.N.Y. July 29, 2003) (claim that victim presented perjured testimony before grand jury

not cognizable on habeas review).[11]  His third ground for relief is accordingly denied.

### 4.    Failure to Provide Rosario Material

In his fourth ground, Moss argues that the prosecutor failed to turn over "critical prior

statements and/or evidence of [sic] information of their primary witness."  Am. Pet., Ground Four.

He claims that one day after Delaney provided the police with a deposition that supported the

charge against Moss, she executed a sworn statement in which she recanted her prior testimony.

Id.  Petitioner asserts that despite discovery demands and requests by his counsel for that Brady

material, defense counsel was never provided with "[t]he substance of the recanted accusations."

Id.

To the extent Moss claims he is entitled to federal habeas relief due to alleged Rosario

violations committed by the prosecution,[12] the Court notes that because such violations are

grounded in state law, federal district courts have held that a claimed Rosario violation cannot

form a basis for federal habeas relief.  See Randolph v. Warden, Clinton Correctional Facility, No.

---

[11]Furthermore, it is settled jurisprudence that any errors before the grand jury are
necessarily cured by the Petitioner's subsequent conviction by a petit jury on the charges
contained in that accusatory instrument.  United States v. Mechanik, 475 U.S. 66, 70 (1986).

[12]Petitioner's state claim relating to this issue was framed by him as a Rosario violation.
See Pro Se Appellate Brief, Point Three.

04 CIV. 6126, 2005 WL 2861606, at *5 (S.D.N.Y. Nov. 1, 2005) ("the failure to turn over Rosario

material is not a basis for habeas relief as the Rosario rule is purely one of state law"); Martinez v.

Walker, 380 F.Supp.2d 179, 186 n.5 (W.D.N.Y. 2005) (Rosario claim "does not present an error

of constitutional magnitude and therefore is not cognizable on habeas review.  Unlike a Brady

claim, a Rosario claim derives solely from a New York state law right") (citations omitted); Del

Pilar v. Phillips, No. 03 CIV.8636, 2004 WL 1627220, at *13 n.33 (S.D.N.Y. July 21, 2004) ("[t]o

the extent that this claim is based on a Rosario violation, it must fail, because a habeas petition can

only be granted to remedy some violation of federal law; the obligation to turn over Rosario

material arises under state law") (internal quotation and citation omitted); Stephens v. Costello, 55

F.Supp.2d 163, 167 (W.D.N.Y. 1999) ("failure to turn over Rosario material is not a basis for

habeas relief as the Rosario rule is purely one of state law") (quoting Green v. Artuz, 990 F.Supp.

267, 274 (S.D.N.Y. 1998)).

However, in light of the Second Circuit's command to construe *pro se* pleadings liberally,

see Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997), federal district courts within this

Circuit have broadly construed habeas petitions alleging violations of New York's Rosario rule as

claims alleging a violation of a defendant's rights under Brady v. Maryland, 373 U.S. 83 (1963).[13]

E.g., Perry v. Johnson, No. 00 CIV. 2380, 2003 WL 22019738, at *3 (S.D.N.Y. Aug. 22, 2003)

(construing Rosario claim as Brady claim for purposes of § 2254 application) (citations omitted);

Forrest v. Mitchell, No. 91 CIV. 7922, 1992 WL 367039, at *2 (S.D.N.Y. Dec. 2, 1992) (Rosario

---

[13]In Brady, the Supreme Court held "that the suppression by the prosecution of evidence
favorable to an accused upon request violates due process where the evidence is material either
to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady,
373 U.S. at 87.

claim "should be analyzed under Brady"), *aff'd*, 22 F.3d 1092 (2d Cir. 1994). This Court therefore considers this ground as one alleging a violation of his Brady rights.

To prove a Brady violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the withholding. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999). To establish that evidence was "suppressed" by the prosecution in a Brady sense, Moss must demonstrate that his attorney did not possess the requested evidence in time for its effective use at trial; as Senior Judge Thomas J. McAvoy of this District has noted, "as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Lutes v. Ricks, 02-CV-1043, 2005 WL 2180467, at *15 n.19 (N.D.N.Y. Sept. 9, 2005) (internal quotation and citations omitted).

The transcript of Moss's pre-trial suppression hearing reflects that at that time, the prosecution provided defense counsel with "Rosario material including [the] preliminary [hearing] transcript of Ms. Delaney; [as well as the] arrest report, incident report, statements, some notes and drawings." See Transcript of Suppression Hearing (8/10/99) ("Suppression Tr.") at 17. The prosecutor also provided defense counsel with that witness's grand jury testimony at that time. Id. at 18.

It has been recognized that no Brady violation occurs where the prosecution disclosed the salient evidence "in the middle of trial just before [prosecution witness] took the stand." Ocasio v. Artuz, No. 98-CV-7925, 2002 WL 1159892, at *13 (E.D.N.Y. May 24, 2002), *appeal dismissed*

15

Ocasio v. Artuz, No. 02-2418 (2d Cir. July 10, 2002).  Since Moss was provided with the materials that form the basis of this ground for relief the day prior to Delaney's testimony, he cannot demonstrate that the material was "suppressed" by the prosecutor in a Brady sense.  See Ocasio, 2002 WL 1159892, at *13; Lutes, 2005 WL 2180467, at *15 n.19  (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.).  Therefore the Court denies Petitioner's fourth ground for relief.

### 5.      Miranda violation

_____In his fifth ground, Moss asserts that the County Court wrongfully allowed statements he made to law enforcement agents into evidence.  Am. Pet., Ground Five.  In support of this assertion, he argues that the statement was "the result of his illegal seizure, without probable cause, and Miranda warnings attached."  Id.

Under Miranda, "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'"  Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).  In considering whether a party has voluntarily provided a statement to the police, courts are to consider the "totality of the circumstances," including evidence of police coercion, the length of the interrogation, the defendant's maturity and education, and whether the police failed to advise the defendant of his rights to both remain silent and to have counsel present during the custodial interrogation.  Withrow v. Williams, 507 U.S. 680, 693-94 (1993); see also Colorado v. Spring,

479 U.S. 564, 573 (1987).[14]  In determining whether a statement was coerced, a court must "examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession[,] ... tak[ing] into consideration 'the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation.'"  Dickerson v. United States, 530 U.S. 428, 434 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)).

Prior to Moss's trial, Judge McGrath conducted a suppression hearing to consider the merits of Moss's suppression motion in which he argued that his statements to law enforcement agents were involuntarily made.  See Suppression Tr.  At the conclusion of that proceeding, the County Court determined that Officer Kehn properly detained Moss on the night of the incident because he "[m]atched the exact description" of the suspect that had been provided to the police by Delaney.  Id. at 68.  The officer then observed a knife sticking out of Moss's back pocket, and, when the officer removed the knife, Moss "became agitated ... and pushed the officer," who then placed Moss under arrest for harassment.  Id.  When he was placed in the patrol car, he volunteered that he "didn't burglarize that lady.  [He] just went to visit her."[15]  Id.  After that remark, one of the officers informed Moss of his Miranda rights, after which he expressed a willingness to talk with the police without an attorney being present.  Id. at 70-71.  Moss thereafter made several voluntary statements, including his declaration that he "didn't do anything wrong," as well as his observation that "the girl upstairs goes to college" and his belief that "[t]he lady

_____

[14]A coerced or otherwise involuntary statement may never be used for any purpose: "any criminal trial use against a defendant of his involuntary statement is a denial of due process of law...."  Mincey v. Arizona, 437 U.S. 385, 398 (1978) (emphasis in original).

[15]Judge McGrath specifically noted that although such comment was made by Moss before he was advised of his Miranda warnings, the remark "was not in response to any questions by any of the officers.  Suppression Tr. at 70.

downstairs is nuttier than a fruit cake." Id. at 71.

"[S]pontaneous statements which are not the result of 'official interrogation' have never been subject to [Miranda 's] strictures." Lineberger v. Conway, No. 03 CIV. 1645, 2008 WL 513203, at *6 (S.D.N.Y. Feb. 26, 2008) (quoting Wolfrath v. La Vallee, 576 F.2d 965, 973 n. 6 (2d Cir. 1978)).  This Court adopts the trial court's factual finding that the statement Moss uttered while he was in the patrol was not made by him in response to any question posed to him by any officer.  This aspect of Moss's habeas challenge is therefore without substance.

With respect to the statements Moss made after he was advised of his Miranda rights, the Court's review of the transcript of the suppression hearing in conjunction with the clearly established Supreme Court precedent noted above, has satisfied this Court that Moss effectively waived his Miranda rights after being informed of same, and that those voluntary statements were therefore properly admitted into evidence at his trial.[16]  E.g., Oyague v. Artuz, 393 F.3d 99, 104 (2d Cir. 2004); Campbell, 440 F.Supp.2d at 141 (citing Oyague).

Based upon the foregoing, the Court denies Moss's fifth ground for relief as being without substance.

### 6.    Trial Court Error

In his sixth ground seeking federal habeas intervention, Moss claims that Judge McGrath committed error when the court "allow[ed] false accusation of uncharged crimes" into evidence. See Am. Pet., Ground Six.

On federal habeas review of a state court criminal conviction, courts are to apply the

---

[16]The Court also notes that the jury was properly instructed regarding the manner in which that body was to consider the evidence relating to Moss's statements.  See Trial Tr. (8/12/99) at 106-16.

harmless error standard enunciated in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) in ascertaining whether a petitioner alleging trial court error is entitled to the relief he seeks.  <u>See</u> <u>Wisdom v. Graham</u>, No. 07-CV-532, 2008 WL 1924930, at *7 (N.D.N.Y. Apr. 29, 2008) (McAvoy, S.J., adopting Report-Recommendation) (citing <u>Fry v. Pliler</u>, 511 U.S. __, 127 S.Ct. 2321, 2328 (2007)).

Although not clearly stated by Moss in his amended Petition, the Court's review of his pro se appellate brief reveals that he argued therein that the trial court wrongfully allowed Delaney's "purjured [sic] statement of stolen property (knife) ... and Officer Kehn's charge of [h]arassment" into evidence, despite the fact that the prosecutor "did not provide [proper] notice."  <u>See</u> *Pro Se* Appellate Brief at 41.[17]

However, as noted above, to convict Moss of the second degree burglary charge, the prosecutor was required to establish that Moss had knowingly and unlawfully entered a dwelling with the intent to commit a crime therein.  <u>See</u> <u>e.g.</u>, <u>People v. Campbell</u>, 100 A.D.2d 517 (2d Dept. 1984); <u>People v. Santiago</u>, 166 A.D.2d 362 (1st Dept. 1990).

During her direct testimony, Delaney acknowledged that her prior statement to law enforcement agents that Moss had taken a knife from her residence was erroneous, and explained that she was merely mistaken when she originally informed law enforcement agents that the knife found in his possession belonged to her.  Trial Tr. (8/11/99) at 47-49.  Since the record is void of any evidence that such witness ever perjured herself regarding this issue, the County Court did not

---

[17]Where the Petitioner's submissions do not provide adequate information relating to habeas claims, federal courts may look to the state court records for guidance concerning the basis for habeas claim.  <u>See</u> <u>Carter v. McGinnis</u>, No. 01-CV-655, 2005 WL 1868882, at *8 (W.D.N.Y. Aug. 2, 2005).

err in allowing the prosecution to elicit testimony relating to Moss's possession of the knife into

evidence, presumably in its attempt to prove that he intended to commit a crime upon entering her

dwelling.[18]

Turning to Petitioner's claim regarding Officer Kehn's testimony, the Court notes that at

trial, that officer testified that he placed Moss under arrest for harassment after he, *inter alia*,

pushed the officer against his patrol car.  See Trial Tr. (8/11/99) at 141.  Since Moss was not

charged with the crime of harassment in the Indictment, he now asserts that such testimony was

improperly allowed into evidence by the trial court.  Am. Pet., Ground Six.

The record reflects that the County Court considered and denied a pre-trial application

made by defense counsel to preclude the officer from referring to the harassment charge during his

trial testimony.  In arriving at his determination to reject that motion, Judge McGrath opined:

> [Y]ou can't try a case in a vacuum.  To preclude [the prosecutor]
> from going into the conduct that defendant engaged in at that
> relevant moment, it would just create a vacuum and lead them to
> speculate, and its inextricably interwoven, and completes the
> narrative.

See Trial Tr. (8/10/99) at 11.

"[T]he use of prior crimes information to complete the narrative of events and provide

context 'is proper under both Federal and State law.'"  Johnson v. Conway, No. 9:01-CV-946,

2007 WL 2042474, at *7 (N.D.N.Y. Jul 12, 2007) (Hurd, J., adopting Report-Recommendation)

(quoting Holmes v. Ricks, 378 F.Supp.2d 171, 182 (W.D.N.Y.2004)) (other citation omitted).

The Court's review of the facts presented to the trial court regarding this issue, together with the

---

[18]"Under New York law, evidence of uncharged crimes or prior bad acts is admissible to
show intent."  Yapor v. Mazzuca, No. 04CIV.7966, 2005 WL 894918, at *20 (S.D.N.Y. Apr.
19, 2005) (Report-Recommendation), *adopted,* 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005).

salient law noted above, establishes that the officer's testimony regarding what transpired the night of the crime, including the testimony which noted that Moss was placed under arrest by the officer for harassment, was properly admitted into evidence.

Since Petitioner has not demonstrated that the claimed errors of the trial court in allowing the above-described evidence into trial had a substantial and injurious effect or influence in determining the jury's verdict, the Court denies his sixth ground for relief.

### 7.    Use of Voice Identification Evidence At Trial

As is noted above, Mittnight testified at Moss's trial that when she was asked whether the individual whom the police had detained on November 15, 1998 was the same individual who had appeared in her apartment earlier that day, she asked the officer to ask Moss to utter the phrase "I came to clean your carpets." Trial Tr. (8/11/99) at 116. Mittnight testified that after he complied with that request, she informed the police that the individual being detained was "definitely him. He has a very nice voice." Id.

Moss claims that the prosecutor's use of such evidence was at trial improper in light of the notice provisions delineated in CPL § 710.30[19] because the prosecution failed to provide Moss with the required notice regarding its intention "to use alleged voice identification / involuntary

---

[19]This provision of the CPL, titled "Motion to suppress evidence; notice to defendant of intention to offer evidence," provides, in part:

> 1. Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant ... to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

CPL § 710.30(1).

statement by Petitioner." <u>See</u> Am. Pet., Ground Seven; <u>see also</u> *Pro Se* Appellate Brief, Point Six. This claim fails for two reasons.

Initially, the Court notes that alleged violations of CPL § 710.30's notice provision – a state procedural law – do not provide an independent ground for federal habeas relief. <u>Garson v. Perlman</u>, No. 07-CV-3197, ___ F.Supp.2d ___, 2008 WL 54164, at *11 (E.D.N.Y. Jan. 2, 2008) (citing <u>McCullough v. Bennett</u>, 438 F.Supp.2d 185, 188-89 (W.D.N.Y. 2006)); <u>see also</u> <u>Welch v. Artus</u>, No. 04-CV-205, 2007 WL 949652, at *39 (W.D.N.Y. Mar. 29, 2007) (alleged violation of CPL § 710.30 "is not cognizable on habeas review") (citations omitted).

Furthermore, after the above testimony of Mittnight, defense counsel lodged an objection and Judge McGrath thereafter struck the portion of that witness's testimony which related to her identification of Moss based upon his voice. <u>See</u> Trial Tr. (8/11/99) at 123. That court further instructed the jury that it was to "totally disregard" that portion of her testimony and not to consider it "in any way or shape or form" in its deliberations. <u>Id.</u>[20]

In light of the above, the Court denies Moss's seventh ground for relief.

### 8.   <u>Instructions to the Jury</u>

Petitioner next complains that the trial court's jury instructions were erroneous. In support of this assertion, he claims that Judge McGrath wrongfully failed to include a request made by defense counsel at the charge conference, and that the court also "effectively refuse[d] to inform the jury [that] intent of a crime must be proven." <u>See</u> Am. Pet., Ground Eight.

Petitioner's ninth ground argues that the cumulative effect of the errors committed by the

---

[20]A jury is presumed to have followed these and all portions of the trial court's instructions. <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000); <u>Shariff v. Artuz</u>, No. 97CIV.2882, 2001 WL 135763, at *3 (S.D.N.Y. Feb. 16, 2001) (citation omitted)).

County Court in its jury instructions deprived him of his right to a fair trial.  See Am. Pet., Ground Nine.  Moss asserts that the instructions "confused the jury," and improperly shifted the burden of proof.  Id.  Petitioner also asserts that during the trial and in its charge to the jury, Judge McGrath wrongfully permitted the jury members to conclude that they could consider the inconsistent statements of prosecution witness Delaney as direct evidence of Moss's guilt.  Id.

Addressing first Moss's claim regarding Delaney's testimony, this claim appears to be rooted in the fact that she initially declared, both orally and in a sworn statement she made at the request of law enforcement agents, that the knife found on Moss's person when he was arrested had been taken from her kitchen.  E.g., Trial Tr. (8/11/00) at 90-91.  Moss appears to suggest that those statements were "prior inconsistent statements" of Delaney when compared to her trial testimony, and that the trial court wrongfully failed to advise the jury, both during her testimony and in its jury charge, that it could not consider her testimony as direct evidence of Moss's guilt in light of CPL § 60.35(1).[21]  See Am. Pet., "Rider Sheet Page No. 8."

---

[21]CPL § 60.35, titled "Rules of evidence; impeachment of own witness by proof of prior contradictory statement," provides, in part, that:

> 1.  When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.
>
> 2.  Evidence concerning a prior contradictory statement ... may be received only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief.  Upon receiving such evidence at a jury trial, the court must so instruct the jury.

To the extent Petitioner asserts that the prosecutor's failure to comply with CPL § 60.35 entitles Moss to the relief he seeks herein, the Court notes that, as with alleged violations of state procedural rules discussed *supra*, federal habeas relief is unavailable for mere violations of state evidentiary rules.  See Arthur v. Beaver, No. 03-CV-4555, 2004 WL2287773, at *4 (E.D.N.Y. Oct. 8, 2004) (federal habeas relief unavailable for alleged violation of CPL § 60.35).  State court evidentiary rulings that erroneously admit evidence are "only redressable in a federal habeas corpus proceeding if ... the particular errors were of constitutional magnitude."  Hunter v. Greiner, 99 CIV. 4191, 2000 WL 245864, at *4 (S.D.N.Y. Mar. 3, 2000) (citing Benitez v. Senkowski, 97 Civ.7819, 1998 WL 668079, at *7 (S.D.N.Y. Sept. 17, 1998)).  Since Petitioner has not established that any of the claimed violations of CPL § 60.35 at his trial rose to the level of a constitutional violation, he is not entitled to the relief he seeks on this ground.[22]

Turning to Petitioner's claims regarding the jury instructions, the Court notes that before a federal court may overturn a conviction due to an allegedly erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973) (internal quotation omitted); Estelle, 502 U.S. at 72 (quoting Cupp).  Additionally, the Supreme Court has observed

---

See CPL § 60.35.

[22]The Court finds that Petitioner has not even established that the prosecutor ever impeached Delaney with her prior inconsistent statement at trial, a necessary prerequisite for application of CPL § 60.35.  Rather, the record establishes that during her direct testimony, she acknowledged that her prior statements that the knife found in Moss's possession belonged to her were mistaken.  See Trial Tr. (8/11/99) at 47-49.  At no time did the prosecutor ever seek to impeach Delaney; therefore the provisions of CPL § 60.35 did not apply.

that: "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (footnote omitted).  The Kibbe Court also noted that an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Kibbe, 431 U.S. at 155.  A party who claims he is entitled to federal habeas relief because of erroneous jury instructions faces a significant hurdle; as the Second Circuit has observed, "[t]he Supreme Court has made it clear that errors in instructions to the jury rarely rise to a constitutional level." Victory v. Bombard, 570 F.2d 66, 69 n.3 (2d Cir. 1978).

Turning to the facts of the case *sub judice*, although Petitioner now argues that the trial court improperly failed to include the phrase "at the time of entry" in its instruction to the jury regarding the burglary charge, see Am. Pet., "Rider Sheet Page No. 8," the Court finds that Judge McGrath's burglary charge, which included the language "[t]he crime of burglary is complete when a person knowingly enters in a dwelling unlawfully and does so with the intent to commit a crime in the dwelling," see Trial Tr. (8/12/99) at 117, accurately conveyed to the jury the elements the prosecutor was required to prove for Moss to be convicted of second degree burglary.[23] Additionally, Petitioner's claim that the trial court's instructions "shifted the burden of proof," see Am. Pet., "Rider Sheet Page No. 8," is both unsupported and squarely contradicted by Judge

---

[23]During the charge conference, the trial court fashioned (at defense counsel's request) a charge regarding Moss's possession of the knife in such a manner so that the jury was advised that his mere possession of a knife at the time he was in Delaney's residence was not sufficient to establish that he intended to commit a crime when he entered her dwelling.  Trial Tr. (8/12/99) at 53.  Moss's counsel characterized the proposed charge as "perfect," id. and the court provided that charge, nearly verbatim, to the jury.  Id. at 116.

McGrath's explicit instructions to the jury regarding the fact that the burden of proving Moss's

guilt beyond a reasonable doubt remained at all times with the prosecutor.  See Trial Tr. (8/12/99)

at 99-104, 118-19.

When reviewing a habeas claim premised upon the assertion that the jury charge was

erroneous, the court:

> must review the jury instructions as a whole.  A challenged portion
> of the jury instructions may not be judged in artificial isolation, but
> rather must be judged as the jury understood it, as part of the whole
> instruction, and indeed as part of all the proceedings that were
> observed by the jury.

Spragion v. Smith, No. CV-04-1880, 2005 WL 3535158, at *10 (E.D.N.Y. Dec. 23, 2005) (citing

Smalls v. Batista, 191 F.3d 272, 277 (2d Cir. 1999)) (internal quotation marks omitted).

After reviewing transcripts of both the charge conference as well as the trial court's jury

charge in their entirety, this Court concludes that Moss has failed to demonstrate that the Third

Department's decision rejecting this appellate claim is either contrary to, or an unreasonable

application of, relevant Supreme Court precedent.  Therefore, the Court denies his eighth and ninth

grounds for relief.

**9.      Prosecutorial Misconduct**

In his tenth ground, Moss asserts that the prosecutor engaged in misconduct during the

course of the trial.  See Am. Pet., Ground Ten.  Specifically, he claims that the prosecutor's

"inflammatory remarks and improper use throughout trial of [sic] theme that Petitioner was

carrying a knife during the commission of the alleged crime deprived petitioner of a fair trial."

Am. Pet., "Rider Sheet Page No. 9."  Moss also asserts that during summation, the prosecutor

improperly: 1) claimed that Moss "blocked the entrance to the door" while he was in Delaney's

26

apartment; 2) commented that "old habits are hard to break," when describing how Moss left Delaney's apartment and then entered the Mittnight home; and 3) referred to the fact that Moss did not testify in his own defense.   Id.

A criminal defendant's right to a fair trial is mandated by the Due Process Clause of the United States Constitution.  Albright v. Oliver, 510 U.S. 266, 273 n.6 (1994) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)).[24]  For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).

Delaney was the first witness who testified for the prosecution at Moss's trial.  During her direct testimony, she discussed the fact that when Moss was initially detained by the police, he was found to be in possession of a knife.  See Trial Tr. (8/11/99) at p. 48.  Since that fact was clearly in evidence, the prosecutor did not engage in misconduct by thereafter referring to that fact during the course of the trial.[25]  Additionally, since Delaney testified that Moss was "blocking the path of the door" which prevented her from entering her kitchen, id. at 24-25, the prosecutor's statement that Moss blocked a door in the residence was fair comment based upon the evidence adduced at trial,

---

[24]"A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment."  Adamson v. People of State of California, 332 U.S. 46, 53 (1947) (footnote omitted).

[25]Moreover, as is discussed *supra*, Moss's possession of a knife may have been a fact on which the prosecutor attempted to establish the intent element of the burglary charge.

and not suggestive of prosecutorial misconduct.  Next, Petitioner correctly notes that the

prosecutor stated in his summation that "old habits are hard to break."  See Trial Tr. (8/12/99) at

87.  Moss now asserts that this was an improper reference to the fact that Moss had previously

been convicted of criminal trespass – a conviction to which the trial court expressly ruled the

prosecutor could not refer at trial.  See Am. Pet., "Rider Sheet Page No. 9," see also Trial Tr.

(8/10/99) at 6-8.  However, the record establishes that at the time defense counsel lodged an

objection to that statement, the prosecutor explained that the comment was merely a reference to

the fact that Moss had:

> walked into Ms. Delaney's residence without knocking, without any
> announcement, went downstairs and walked in, did the same thing at
> the Mittnight residence.  It wasn't a reference to any of his prior
> convictions.

See Trial Tr. (8/12/99) at 130-31.  The trial court agreed, claiming that "the way [the prosecutor]

said that[,] he was referring to the habit of walking into people's houses without knocking."  Id. at

131.

    This Court cannot find that Petitioner has established that the prosecutor's comment in

summation of Moss's "old habits" had a substantial and injurious effect or influence in

determining the jury's verdict, e.g., Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998), or

otherwise amounted to misconduct sufficient to warrant the granting of Moss's habeas application.

    Since Moss has not demonstrated that the Third Department's decision denying this

appellate claim is either contrary to, or represents an unreasonable application of, the Supreme

Court precedent noted above,[26] the Court denies his tenth ground for relief.

---

    [26]There is no record support for Moss's claim that the prosecutor improperly referred to
Petitioner's failure to testify in summation.

## 10.   Ineffective Assistance of Appellate Counsel

Petitioner next argues that his appellate counsel rendered ineffective assistance.  See Am.

Pet., Ground Eleven.  In support of this claim, he appears to assert that counsel wrongfully failed

to consult with Moss about the arguments that were to be included in the appellate brief, and

improperly failed to include some or all of the arguments Moss ultimately asserted in his *pro se*

appellate brief.  Am. Pet., "Rider Sheet Page No. 9."

As to Moss's claim that his appellate counsel failed to communicate with Petitioner, this

Court notes that "'[a]n appellate attorney's failure to communicate with his or her client, by itself,

does not constitute *per se* ineffective assistance of counsel.'"  See McIntyre v. Duncan, No.

03-CV-0523, 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) (quoting Buitrago v. Scully, 705

F.Supp. 952, 955 (S.D.N.Y. 1989)).  Thus, "[a]lthough it may be desirable and productive, the

Constitutional right to effective assistance of counsel does not encompass the requirement that an

attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue."

McIntyre, 2005 WL 3018698, at *3 (citation omitted).  Therefore, Petitioner's assertion that his

appellate counsel failed to consult with Moss prior to filing the appellate brief, or incorporate in

that brief the arguments asserted by him in his *pro se* appellate brief, does not establish that he

received ineffective assistance.

As to Moss's claim that his attorney failed to argue "significant and obvious issues" and

instead pursued "significantly weaker" arguments on appeal, see Am. Pet., "Rider Sheet Page No.

9," the Court notes that this claim is principally rooted in his argument that his appellate counsel

wrongfully failed to assert any of the claims Moss raised in his *pro se* appellate brief in the

counsel's brief.  However, as is more fully discussed above, the claims asserted by Moss in his *pro*

*se* appellate brief (and argued by Petitioner as grounds for relief herein) are without substance.

Petitioner's appellate counsel therefore cannot be found to have rendered ineffective assistance by

failing to assert those meritless claims on appeal.  See Funches v. Walsh, No. 05 CIV. 2839, 2006

WL 1063287, at *14 (S.D.N.Y. Apr. 21, 2006) (citing Mitchell v. Scully, 746 F.2d 951, 955 (2d

Cir. 1984)); see also Stapleton v. Greiner, No. 98 CV-1971, 2000 WL 1207259, at *13 (E.D.N.Y.

July 10, 2000).

The Court therefore denies Moss's eleventh ground for relief.

**11.    Illegal Sentence**

In his final ground, Moss asserts that the sentence he received because he was adjudicated a

persistent felon violated the doctrine announce by the Supreme Court in Apprendi.

Prior to his sentencing, Moss advised his attorney that he acknowledged the fact that he

was convicted of the prior felonies which in turn caused him to be subject to be sentenced as a

persistent felony offender.  See Sentencing Tr. at 2-3.

The Second Circuit has considered constitutional challenges to sentences imposed under

the persistent felony offender statute, N.Y. Penal Law § 70.10, based upon the Supreme Court's

holding in Apprendi, and has concluded that sentencing under that statute does not run afoul of the

rule of law announced in that case.  See Brown v. Miller, 451 F.3d 54, 58-59 (2d Cir. 2006); see

also West v. Breslin, No. 06 CIV. 4167, 2008 WL 110947, at *6-8 (S.D.N.Y. Jan. 2, 2008);

Woods v. Poole, No. CV-03-5708, 2007 WL 4166042, at *1-2 (E.D.N.Y. Nov. 19, 2007).

Based upon the foregoing, the Court denies Moss's twelfth and final ground as meritless.

**III.    Certificate of Appealability**

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability,
> an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in
> > which the detention complained of arises out of
> > process issued by a State court ....[27]

A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  Since Petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

---

[27]Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  See Fed.R.App.P. 22(b).

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that the amended Petition (Dkt. No. 30) filed in this matter is **DENIED** and **DISMISSED**; and it is further

**ORDERED**, that state court records that were not filed herein be returned directly to the Attorney General at the conclusion of these proceedings (which include any appeal of this Memorandum-Decision and Order filed by any party); and it is further

**ORDERED,** that a Certificate of Appealability shall **not** be issued in this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED**.

DATED:        May_15, 2008
              Albany, New York

Lawrence E. Kahn
U.S. District Judge